The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attention and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's case will be called, as previously announced, the times will be as allotted to counsel. The case today is Natalia Sebollero-Bertran v. Puerto Rico Aqueduct & Sewer Authority. Appeal number 201096. Attorney Toledo, please introduce yourself on the record for the court. Good afternoon. May peace support. I'd like to reserve two minutes for rebuttal. Yes. Thank you, Leon. My name is Ana Toledo and I represent Appellant Natalia Sebollero-Bertran. I'm honored to substitute deceased brother counsel, Devenido Salas-Gonzalez, who passed away last November. I come before you today on behalf of Appellant to request that the court, pursuant to Federal Rule of Civil Procedure 12B-6, dismiss Appellant's citizen suit under the Clean Water Act against Apolli Prasa alleging the illegal sewage discharges that flowed into the Buena Vista Creek, a tributary of the Puerto Nuevo River. The standard of review for the 12B-6 dismissal is the abuse of discretion. The district court concluded that the consent decree approved by the United States District Court on the May 23, 2016, case 2015-2283 between the United States versus Prasa precluded the constituted diligent prosecution and the suit was barred. Counsel, excuse me. My understanding is that after your letter was filed, notifying EPA and Prasa about your concerns that not initially, but I guess not before they first sent you a letter saying that they did not think there was a problem. At some point, Prasa did notify EPA that the consent decree had to be amended to specifically address the sewer problem that you had identified. Is that correct? Basically, it's not really amended, but they included it as an area of concern under the letter was sent on the 31st of December, 2018. The complaint was filed. The letter was answered on March and thereafter in April, the complaint was filed. As I understand, it was around May that it was included, that the area was included as an area of concern. The problem is this, that upon deciding the case, the District Court adopted a hybrid method to dismiss the complaint, which doesn't really conform to Rule 12 because it used the threshold, the standard of the motion for summary judgment and sort of applied it to the motion to dismiss. For example, instead of taking the well-pleaded facts in the complaint as true and more favorable to the plaintiff, it went into the contents of the consent decree without plaintiffs being able to in any way make any discovery. So without an answer to the complaint and without the benefit of carrying out any discovery as to what had been carried out, what work had been done since 2015, which is the subsequent, I mean, I don't personally know about it because no discovery has been carried out. The court was aware, I believe, of these amendments to the consent decree that would appear to address your areas of concern. How did the court become aware of that? Were there filings made by PRASA that advised the court of that? Well, PRASA submitted a motion to dismiss, including documents, but there was like no verified, not a single sworn statement. And it is our position that there is not, it's either a 12 v. 6 dismissal or going into a Rule 56 procedure. But you cannot do a hybrid dismissal because it's not, the due process rights of being observed. Because on the one hand, plaintiffs submitted a sworn statement and photographs of how even after the complaint was filed, the sewage overflows continued. So it's not like all the work that had been supposedly completed until that date prevented these overflows from continuing to happen. And there was like no sworn statements and absolutely no opportunity for plaintiff, for appellant to find out what exactly was done and when. Because as the district court concluded and adopted as a conclusion of fact in the opinion, the district court adopts as a conclusion of fact, facts that are not even verified in the record. So, not only did plaintiff didn't have that opportunity and some of her allegations were discarded contrary to the standard that this court has set for a dismissal under Rule 12b. So there's, you know, and in fact, the court applied the standard that is the applicable one on their motion for summary judgment, not for a motion to dismiss. So it sounds like you're taking the position that perhaps without saying so, without taking the formal steps that the court is supposed to do, it sort of converted this into a motion for summary judgment without really giving notice that it was doing that, without following the proper steps to do so. Exactly, because there wasn't even an answer to the complaint by appellee. There wasn't even an opportunity. Like the court says, oh, plaintiff didn't prove that there wasn't any diligent prosecution. But the thing is that she wasn't given an opportunity to carry out not even any discovery on the contents of the motion to dismiss. So the court accepted as true the compulsory arguments set forth by, you know, appellee in a motion, not even verified statements. So it was like a hybrid non-existent, to put it that way, you know, was there was no way to counter that methodology. You said that subsequent to the filing of the complaint, you said you submitted some photographs and some affidavits indicating that the problem was continuing. That was in opposition to their motion to dismiss. Is that what you were doing? That's correct, Your Honor, because seeing, perceiving that impending, you know, inclination of the court to dismiss the case, she submitted photographs and a sworn statement saying, you know, no, this is still going on. And this is still, you know, a very serious offense. And, you know, if you look at pages six to eight of the opinion, the judge, the opinion adopts, the court adopts as statements, as proven facts, statements that were contained in a motion to dismiss. So I believe that in that sense, you know, appellant believes that she was put at a disadvantage because she was not allowed her, you know, her opportunity either under one rule or the other, because her abnormals contained in the complaint were not taken, the well pleaded facts were not taken as true and read in the, you know, most favorable to her. And another important thing is this, that in Puerto Rico, since 1978, there has been constant litigation, no less than nine consent decrees, one criminal conviction, 15 count criminal conviction and five years of probation, which I think it's unprecedented for utility, and that have precluded citizens from filing citizen suits. So it has been like, between EPA and an appellee have prevented citizens from asserting a Congress granted right to enforce the law. And it is no small detail that 100% of our lakes, reservoirs and streams are impaired, that 93% of our coastal waters are impaired. So EPA in Puerto Rico doesn't apply the law as it does in the mainland. And in that sense, we feel it's an unequal treatment of Puerto Ricans, even though the Clean Water Act doesn't make an exception for Puerto Rico, even though we're supposed to have equal treatment, it's not the reality. And we are in a tropical island where sewage discharges to the ocean cause much more than somewhere, let's say in Maine. And the reality is that we have daily discharges of raw sewage, not just this raw sewage, but we're talking 160 million gallons a day of primary sewage, which is not allowed in the mainland from six regional wastewater treatment plants, which is illegal since 1977, when the amendments to the Clean Water Act went into effect. And that is still allowed in Puerto Rico. So it's just outrageous that this correct treatment that we get, that's why this case is so important because this court hasn't seen, I looked it up, and I don't think that up here in this court, you've seen this kind of case from Puerto Rico, because the litigation since 1978 to this day, and the consent decrees have precluded citizens to come before the court and petition for redress of grievances. And the only case of the case that citizens did organize and filed it 19, 20 years ago, I filed it in Guayama. And the courts did the same thing, said, oh, EPA issued an administrative order, and it's going to be solved. Six years later, they had to file another case because it wasn't solved. And meanwhile, people had to live with sewage in front of their homes. So it's really important because people want for the sewage to stop at least one pipe at a time. The PRASA problem has been there for decades. And it's after $5,000 million that have supposedly been invested in capital improvements. We're still having sewage overflows that compromise our drinking sources, drinking water sources, and our swimming sources. And it's just not fair. It's like people should have the right that Congress wanted them to have to enforce the Clean Water Act. And it's just not it's not correct. Because even in this last consent decree, it states that the consent decree is not an obstacle. And that is something that APALE didn't inform the court that it says that in paragraph 123, of course, this is something that we look for because it wasn't proffered. It says that the consent decree in no way relieves PRASA of its responsibility to comply with all applicable federal, commonwealth, and local laws, regulations, and permits. And compliance with this consent decree shall not constitute a defense to any action pursuant to said laws, regulations, or permits, except as otherwise provided in this consent decree. Ah, so in terms of that prohibition, I would like some, you know, some, I would like to know why the court didn't look into that either. Because I think that this in and of itself, what it says is, no, this this consent decree doesn't prohibit the filing of citizen suits. So do you know if the whole consent decree was presented to the district court in the case? Well, Your Honor, I have to, I have to, I don't know. I came in late to the case, as you very well know. So perhaps, I don't think the entire thing, the entire document was filed. But I can tell you one thing that I did find out recently doing research for this case, that their counsel might, you know, shed some light in it. And it is that because of the approved fiscal plan, that consent decree has been scaled back in terms of capital improvement, you know, program of the investment. So not only what was approved hasn't been enough to stop these sewage overflows, but now they're going to spend less in fixing what has to be fixed. And that, you know, first one to Bromesa. So we don't even know what it is they're scaling back on because it's not detailed in the fiscal plan. And that's very, very scary to appellant. So the part of the consent judgment that says it's not to be used as a defense, was that part presented to the district court? Or you just don't know? Well, what the court cites, what the court cites says, they take us true that it takes care of, that it's going to fix the problem that affects appellant. Problem is that it doesn't specifically address it, number one. Number two, there's no timetable. And as far as we know, if this was a long time, it's, you know, it's like I said, you know, a process in no hurry to get things done. Because as long as the district court doesn't let citizens use their Congress vested right to file a citizen suit, there are no hurry to fix anything. Because right now EPA is not, I believe EPA is not even imposing stipulated penalties. They really don't have an incentive to comply with the consent decree because we're seeing it everywhere. Excuse me, counsel. Other questions from the panel at this point? No, thank you. I'm good. All right, we'll hear from Mr. Ramirez and you can reserve some time. Attorney Toledo, you should mute your camera and mute your audio at this time. And so there should be on your control bar, there should be a camera symbol and there should be a audio microphone symbol. You want to click them both so that they're both off. Thank you. Attorney Carlos Ramirez and CERN, if you could please unmute your device and introduce yourself on the record for us. Yes, good afternoon. May it please the court. My name is Carlos Ramirez and CERN and I'm here to represent the Puerto Rico Aqueduct and Sewer Authority. If you could hold on while I try and get her back in the meeting. I'm sorry about that, judges. So, I'm sorry. Here I am. Yeah, hold on. Thank you very much. At this time, could I ask IT to confirm that we're recording and we're on YouTube again? Great. And so, Attorney Ramirez, CERN, please go ahead. I just want to say I think sister counsel Toledo has not muted her computer yet. I'm just so sorry. No. Okay, perfect. May it please the court. Again, my name is Carlos Ramirez and CERN and I will be arguing in favor of the Puerto Rico Aqueduct and Sewer Authority. I'm very proud to say that this is my first time appearing before this court. And your honors, in this case, all roads lead to dismissal. Every analysis, every- I'm looking at the district court's decision towards the end where, and I'm quoting the district court's language. Defendant, on the other hand, alleges that pursuant to the consent decree, it has engaged in a number of activities, including implementation of a sewer system operation, a maintenance program. The court goes on and on to describe what your client says it has been doing and perhaps will be doing under the consent decree. Given the procedural posture of this case, which opposing counsel points out, was always consideration of your motion to dismiss. On what basis was the court taking into consideration what it even describes as allegations of your client as to what it was doing? How could the court possibly justify that given the procedural posture of the case? On its face, that seems like an error that requires us to vacate the decision. How do you argue the contrary? Your honor, thank you. It may look that way. In our opinion, it's a matter of wording. The court evaluated a consent decree which was judicially approved and is in place to- presented. Diligence in these cases is presumed. It's a matter of plaintiff or, in this case, appellant arguing with sufficient factual allegations to overcome that presumption of diligence. The only factual matter or allegation that sewer overflows going on at the 10th Street sewers. Your honor, different courts have held that the mere existence of violations, even ongoing violations, do not represent lack of diligence. Therefore, even though an agency, in this case, PRASA, may be doing everything in its power to remedy the situation, violations may continue. If, in fact, PRASA was diligently prosecuting these kinds of violations, then that would be okay. But what allowed the court to conclude, as it did, that it was diligently prosecuting these violations? You're certainly not suggesting that just because the consent decree says that certain things should be done in order to address violations that they are, in fact, being done, that they are, in fact, being diligently prosecuted. Are you suggesting that the mere existence of the consent decree satisfies the diligent prosecution obligation? No, your honor. We're not saying that the mere existence of the consent decree establishes even diligent prosecution. What does? I'm sorry. I was distracted by Ms. Toledo turning on her camera. I was saying the consent decree, the existence of the consent decree, does not imply diligent prosecution, but there is a presumption that it is being diligently prosecuted. Mainly, it contains dispositions for monetary penalties. But presumptions are rebuttable, and you can't even get to the rebutting if the court cuts it off at the presumption when there's been a pleading that it's ongoing and it's not being diligently prosecuted. Yeah, but it is on plaintiffs or diligence, and they must do more than just merely show that the agency prosecution is not moving with the alacrity that they desire. Well, that sounds like that could all play out on a summary judgment record, perhaps, but we don't have summary judgment. I mean, they point out that no discovery was permitted here. As Judge Thompson's pointed out, there's no way, given the procedural posture of the case, that that presumption that you referred to could be rebutted. So I don't understand how, given the procedural posture of the case, this presumption could possibly be helpful to you. Well, it's a claim processing rule, Your Honor. 12b-6 requires plaintiffs to argue their case, to plead sufficient factual material to overcome that presumption. It's not on plaintiff. But a plaintiff has a pleading. You can file an answer and perhaps a counterclaim. If you filed a counterclaim, then perhaps at that point the plaintiff would have to do more, but the only stage of the proceeding is that the plaintiff has had one opportunity to file a motion to dismiss. Your motion to dismiss makes allegations that you're saying create a presumption that the court has to accept, and there's no opportunity in that procedural posture for the plaintiff to rebut the presumption. Well, they had their answer to our motion to dismiss. Their oral argument said that their allegations were not taken as true, and that is not true. They were absolutely taken as true. They were just found to be insufficient to overcome the standard of review in this case. I mean, the standard of pleading. Also, there was a question of whether the... I believe it was Your Honor that asked that it was consent decree included or just referred to in the motions. The consent decree was attached to the claim in its entirety. It was... It was... Attached to plaintiff's complaint? Plaintiff's complaint, yes. It was plaintiff who directed the court's attention to the EPA complaint, the consent decree, and the notice of intent to sue. Now, all these... The consent decree is a matter of public record. It's part of the case where EPA brought action against PRASA and gave way to this consent decree. It was... It was judicially approved in the same court as this case was being seen, and was therefore under the exceptions of the rule... Counsel, you make a... Excuse me. You make a fair point. If the consent decree was attached to the complaint, then the court was entitled to look at the terms of the consent decree and deciding whether the complaint met the requirements of Rule 12b-6. That's true, but the allegations in the complaint... Let me just read you two allegations in the complaint. This is from the EPA. PRASA, in response to the 60-day letter, offered no evidence that the EPA was diligently prosecuting any action addressing the specific violations raised in the 60-day letter, and is therefore not diligently prosecuting any action against PRASA with respect to the specific discharges raised in this complaint. The violations of sewers discharges are ongoing, and several have occurred on several occasions again after the 60-day letter was sent to the defendant PRASA. Given that we're dealing with a motion to dismiss, don't those allegations have to be taken as true? Before you answer, Mr. Ramirez, can we pause the recording? Mr. Ramirez, whenever you're ready. Thank you, Your Honor. May it please the court? No, Your Honor. That is exactly the kind of allegation that may not be taken as true because it is a concussory allegation. Like we said, the fact that there are ongoing spillages coming out of the sewers does not mean there is lack of diligence. The fact that PRASA made no commitment or provided no evidence to a letter sent by a private citizen has no bearing on the rule whether to dismiss or not on the claim. It's outside the kind of allegations that must be not taken or dismissed because they are of concussory nature. They are mechanically repeating what the claim is and concluding by themselves that it is a lack of diligence and therefore are entitled to relief. It's right there in that same allegation. Rule 8 requires a plaintiff to provide a short or plain statement of the claim showing that a pleader is entitled to relief. That was done, but they must provide the grounds with more than labels and conclusions as Tuomly has stated. In the local state, Ocasio v. Fortunio, which was decided in the same court as this case, it was stated that the complaint must contain enough factual material to raise a right of relief above the speculative level on the assumption that all allegations in complaint are true. Present allegations that nudge his claim across the line from conceivable to plausible. Okay, so you make a fair point about conclusory assertion. How about this allegation? The injury to the plaintiff is that whenever heavy rain occurs, raw sewage coming from the point source here in mention is dumped in the creek that runs through her backyard near the coordinates quoted in this letter and expose her and her children to diseases, foul odors, and other health threats. There's nothing obvious about that. That's just describing what they're experiencing in an area that is covered by the consent decree. Yes. Are we supposed to take that as true? Yes, and you may. It is covered by the consent decree. Therefore, it was already in the plan of action that PRASA is heading towards bringing itself into compliance with the CWA and remedying these situations. As the court found, the fact that it was put in as an area of concern is further evidence that PRASA is attending to the problem. Now, this consent decree was entered in 2015. These allegations concern 2019, so it's four years later. Yes, Your Honor. It appears that the problems are ongoing. The consent decree was written or created in 2015. It was elevated to approval in 2016, and in 2017, Puerto Rico was hit by two Category 5 hurricanes. At the end of 2019 and 2020, it was hit by earthquakes. What I'm trying to say here is PRASA is a bit overspread in a sense. It hasn't been an easy time. There are exigent circumstances to all this, primarily economical, as Sister Counsel has pointed out. But I would like to point out that the storm drain that is contained in that allegation does not belong to PRASA. It belongs to the municipality of San Juan, which is also under a consent decree, and it's not part of this case. PRASA is on its way and working towards fixing— Is that part of the record, Counsel, what you just said? Yes, and it's even admitted by the plaintiffs in their claim. It makes a distinction between raw sewage sewers, which are administered by PRASA, and rain collection sewers, which belong to municipalities and the state, depending on where they're located. So, in that sense, the river sewer, which is apparently discharging pollutants into the creek, well, the fact that it's coming out of that sewer is not attributable to PRASA. PRASA has to go through what the consent decree calls the S.U.M.P., the Sewer System Operation and Maintenance Plan, which along with a condition assessment plan, and it has to go through the entire Puerto Nuevo system with a fine-tooth comb to report and remedy any deficiencies found. And not only was the 10th Street, which is 10th Street in Villa Nevarez, contained in the consent decree, plaintiffs have mentioned that it is not because the sewer that is mentioned in the consent decree is 2,000, I don't know how many feet away, which if you convert it, it's half a mile. It's in the same vicinity. It's in the same neighborhood. PRASA has been, since 2016, on its way to fix it. Even more so, PRASA signaled it as an area of concern, and it was PRASA who brought it to EPA's attention. So, there should be no question that PRASA is definitely diligently prosecuting the problem. When PRASA, under the consent decree, puts an area of concern as such, it is saying, this is a special area which requires our special attention, and we need to divert funds to that specific problem. Council, I thought as a proposition of law, that actions that might be taken subsequent to the filing of a complaint cannot be considered in deciding whether the environmental agencies have been diligently prosecuting the problem's was done post-filing of the complaint can appropriately be considered. I thought the law was to the contrary. Well, PRASA cannot on its own amend the consent decree, right? So, PRASA has to evaluate the problem once it's brought to their attention, go and determine a plan of action, and then ask the EPA to include that under the consent decree. So, in my understanding, the only reason it took as long as it did, it's not a response to the claim, but rather a timing issue. Are there affidavits, declarations, or other competent evidence in the district court record that support the exposition that you just gave us about all the efforts that PRASA has undertaken? There are not sworn statements, but the consent decree is a matter of public record, and information about how it is being prosecuted, or diligently prosecuted, is a matter of public record. At any time, a citizen may solicit this information, and with the benefit of that information, bring it forth, but not simply present conclusory allegations saying that it's not happening. But the disconnect that I'm having right now, and maybe you can help me connect it a little better, is I think very much like Judge Lopez's last question to you, that in terms of the bar, we're looking at whether EPA is diligently prosecuting, and we have allegations from the plaintiff that it is not, and we have evidence that might be available at sort of a summary judgment stage about whether this citizen suit needs to go forward, but it really doesn't have anything to do with the bar, with the diligent prosecution bar. And so I'm sort of left with, on the record that I see about what EPA is doing or not doing, I see a complaint that survives the motion to dismiss. Well, Your Honor, So help me out with that. Well, I would say we obviously disagree, because the court considered public documents, which were a matter of public record, they were subject to judicial notice, and the point of this whole dismissal is that it was on plaintiff to allege sufficient facts to overcome the burden at that stage, and they did not. The only factual allegation that they were making was that the 10th Street sewers were on occasion of heavy rains, which is not an ongoing problem, which is not a continuous problem. It is a sporadic problem when heavy rains occur that they were ongoing, and that is not enough to overcome the presumption of diligent prosecution. Well, we've gone over time. I'm going to ask the judges on the court if you have additional questions of Mr. Ramirez. At this time. I'm fine. Thank you. All right. Thank you, Mr. Ramirez. We will hear from Ms. Toledo on rebuttal for two minutes. Yes. Ana Toledo again for appellant. I just want to briefly say various things. In terms of what gets to the storm sewer, if there wasn't sewage coming out of the manholes, it wouldn't get to the storm sewer. So that's really important because what comes out is definitely the responsibility of appellee. That's number one. Number two, they don't even, as has been contained in the consent decree, they didn't even know where it was coming from because they had to do maps. They had to prepare these maps, which we don't even know. We didn't get to discover to do if they're prepared or not. They don't have a real knowledge of where the sewage is coming from. So it is not accurate to say that they know with precision where it's coming from. Another important thing here is that the opinion relies consistently on the case on this court. I don't know if I have the pronunciation correctly. The C28 precedent, which discusses the diligent prosecution standard. The problem with that case, again, that's a summary judgment case. It's not a motion to dismiss case. And in that case, so the parties had not only verified statements and evidence, but that the possibility of carrying out the discovery. And it is important to note that the EPA also has a case, an ongoing case against the municipality of San Juan because of the combined sewers. Whether they should have merged the cases or consolidated, that's something for the agency to have done. But certainly, whatever sewage gets from the street because it overflows into the storm sewer is the responsibility of PRASA. And it just baffles my mind how PRASA tries to portray that this problem of the overflows is something that happened from the hurricane or the earthquake this way. Until now, when, again, they have spent supposedly $5 billion, which is part of the reorganization of Puerto Rico, since 1978 for alleged capital improvements. Because this is not a problem that just happened yesterday. Counsel, just very quickly, a factual question on that point. My understanding is that there were three or four consent decrees between EPA and PRASA prior to this 2015 consent decree. Do you happen to know, and these documents are a matter of public record, did they also address the areas of concern that you have identified in this case, those prior consent decrees? Do you know? Some of them do, Your Honor. It's really, it's five, I think it's five cases and nine, it's nine because there's amendments to them. It's a total of, I think, nine consent decrees. And some of them do because one of them has to do with drinking waters. One has to do with 61 plants. Another one has to do with pumping stations. But I would say that out of those five cases, perhaps three have to do with, you know, involve this. Because they involve the Puerto Nuevo plant, which is probably the most, the biggest one that even including has four places where they have permit to discharge raw sewage. Four places where they can have actually permit to discharge raw sewage. So it, which is just outrageous, you know. And that is something that I hope that EPA gets to curtail sometime soon. But as it pertains to people, they shouldn't be living with a manhole that, yeah, rain, Puerto Rico rains a lot. This is a tropical island. It's not a sporadic, you know, event. And that's exactly when manholes, you know, overflow when it rains. Because when it doesn't rain, they never overflow. You know, even when there's a failure in the electricity. So I think it's not, you know, appropriate to say that. And regarding the public documents, it's important also to mention this. That the local, even though documents are supposed to be public documents. Now, you know, regarding all of the Clean Water Act, what EPA is doing now is that they're referring citizens to file a FOIA request. And what happens with that is that the FOIA officer writes and says, oh, my time, my time, I'm going to build. Is this in the record? No, but I am rebutting what Council said. All right. I think we're going to have to end there. And I would like to thank both Council for their arguments. Thank you, Council. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this Honorable Court. Council, you may disconnect from the meeting at this time.